UNITED STATES of America, Substituted for R. Bergman, Master of the Steamer Henry County, Appellant, v. CARGO of About 3,253 Tons of COAL Laden on Board Steamer HENRY COUNTY, Whereof William Jacks & Co., Inc., is Claimant, Appellee.

UNITED STATES of America, Substituted for Martin Miller, Master of the Steamer Franklin County, Appellant, v. CARGO of About 3,248 Tons of COAL Laden on Board Steamer FRANKLIN COUNTY, Whereof William Jacks & Co., Inc., is Claimant, Appellee.

(Circuit Court of Appeals, Third Circuit. February 27, 1926.)

Nos. 3366, 3367.

Appeals from the District Court of the United States for the Eastern District of Pennsylvania; McKeehan, Judge.

Affirming decrees, 11 F.(2d) 805.

George W. Coles, U. S. Atty., and Joseph L. Kun, Asst. U. S. Atty., both of Philadelphia, Pa., and Harold F. Birnbaum and Arthur M. Boal, both of Washington, D. C., for the United States.

T. Catesby Jones and James W. Ryan, both of New York City, and Howard H. Yocum, of Philadelphia, Pa., for appellee.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

PER CURIAM. The same questions of law and fact are involved in the above two cases. They were tried together and disposed of in one opinion in the District Court. The

United States Shipping Board Emergency Fleet Corporation, owner of the steamers Henry County and Franklin County, through its agent, Potter Transportation Company, Inc., entered into two contracts of affreightment on May 28, 1920, with William Jacks & Co., Inc., of Glasgow, Scotland, to carry on each steamer a cargo of about 3,150 tons of coal from Philadelphia, Baltimore, or Hampton Roads to one safe French Atlantic port for $18.25 per ton of 2,240 pounds. The particular port from which the coal was to be taken was to be declared before the steamers left New York.

The charterer ordered the steamers from New York to Philadelphia on June 19, 1920, which was Saturday. They left New York the next day, Sunday. On June 18, 1920, a strike of the trainmen at Port Richmond, one of the two coal piers in Philadelphia where the boats could be loaded, broke out. A day or two thereafter it spread to the Greenwich Point pier, the other port in that city where coal could be loaded. There is a question as to whether or not the charterer knew of the strike when the steamers were ordered to Philadelphia.

Lay days for loading, if required by Jacks & Co., were not to commence before June 5, 1920; if not required, they were to commence from the time the steamer was ready to load (or within 48 hours after readiness to load, if there was a delay while awaiting turn at berth), and after notice had been given in writing by the master of such readiness to the Shipping Board. The cargo was to be loaded with customary dispatch, but in no case was less than 1,500 tons per running day to be loaded. Any time lost through riots, strikes, etc., was not to be computed as part of the loading time. Because of the strike they were unable to begin loading until July 23, when the Henry County was assigned to berth. She completed her loading July 27, and the Franklin County the following day.

Libels were filed by the United States, as owner of these steamers, to recover for demurrage while they were waiting to load. The government contends that the strike does not excuse the delay because after it started, the steamers should have been ordered to one of the other ports, and not to Philadelphia. It contends that in any event the boats could have been loaded at Greenwich pier.

The appellant, in our opinion, cannot prevail, for the reasons set forth in the opinion of the late learned trial judge, which we adopt as expressing our views.

The decrees are affirmed.