## UNITED STATES v. BOWRING & CO.
### No. 144.

Circuit Court of Appeals, Second Circuit.
Feb. 14, 1933.

See, also, 26 F.(2d) 91.

George Z. Medalie, U. S. Atty., of New York City (F. R. Conway, of Washington, D. C., of counsel), for the United States.

Loomis & Ruebush, of New York City (Homer L. Loomis, of New York City, of counsel), for appellee.

Before MANTON, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

SWAN, Circuit Judge.

Bowring & Co. chartered the steamship Edgecomb from the United States for the carriage of a cargo of coal from Baltimore to Buenos Aires. By the terms of the charter, demurrage was payable at a specified rate per day in the event that loading was not accomplished within the time stipulated. The libel alleges that the vessel was ready to receive

cargo on June 22, 1920, and her master on that date gave notice of her readiness; that lay days expired July 1st, but loading of her cargo was not commenced until July 21st. It was finished on the same day. Demurrage is claimed in the amount of approximately $115,000. The respondent's amended answer denies the giving of any notice of readiness to load, and sets up in further defense (1) that the steamer was not ready to load until after July 21st because she lacked sufficient bunkers for her voyage; (2) that after loading she was guilty of a deviation to obtain bunkers; (3) that the delay in berthing and loading the steamer was due to a strike in the railroad yards serving the loading piers, and was within an exception of the charter party; and (4) that on June 24, 1920, the lay day clause of the charter was abrogated by an agreement of the parties. Evidence was taken upon all these issues and resulted in a voluminous record. The District Court dismissed the libel, resting its decision chiefly on the ground that the delay was due to a strike and not to any fault of the respondent.

■■ By the terms of the charter, lay days are "to commence from time steamer is ready to load (or within 48 hours after readiness to load if delayed awaiting turn at berth) and master has given notice in writing of such readiness to the charterer or his agent." The master swore manfully that he had delivered a notice of readiness to the charterer's agent on June 24th, but the contrary was amply proved to the satisfaction of the trial judge. The contract of the parties made the giving of such a notice a condition precedent to any claim for demurrage, and their contract must control. The Skomvaer, 297 F. 746 (C. C. A. 2). Hence the libelant is obliged to contend that the condition was waived. This contention is based upon conduct of Weston, Dodson & Co., from whom the charterer purchased the coal. On June 22d, Weston, Dodson & Co. requested the libelant's agent to have the vessel registered at the coal pier, although she was still in dry dock, and placed loading orders with the Tidewater Coal Exchange which in turn placed them with the railroad serving the loading pier. Registering the steamer was merely to preserve her turn in the line of steamers awaiting a berth at the pier. It had nothing to do with her readiness, as is apparent from the fact that she was then in dry dock. Registering her for her turn was one thing and giving notice to the charterer of her readiness to load was another. They were distinct and independent steps to be performed at separate times and places. Neither the master of the steamer nor the libelant's agent considered that the former dispensed with the latter, for the master testified that Mr. Hermansdorfer told him about registering and also told him "to be sure not to forget my notice of readiness to load when the ship was ready." Nor did Tracy Steamship Company, the libelant's operating agent for the vessel, consider that the notice had been waived. Letter of June 23d, Respondent's Exhibit CCCC. Even if it be assumed that Weston, Dodson & Co. had authority to waive on behalf of the charterer the giving of notice of readiness to load, as to which we make no decision, their request to register the vessel and their placing of loading orders with the Coal Exchange did not constitute such a waiver. If actual loading would constitute a waiver of the notice of readiness [Washington Marine Co. v. Rainier Mill, etc., Co., 198 F. 142 (D. C. Or.)], this would not avail the libelant, for no delay occurred thereafter.

It is also contended that a letter of June 24th, written by Tracy Steamship Company, was a sufficient notice of readiness. This letter was written in confirmation of a telephone conversation which related to eliminating the demurrage clause, not to insisting upon it. The letter was neither intended by the sender nor understood by the recipient as a notice which would start the running of lay days. The contention is plainly an afterthought, for the libelant strenuously objected to admission of the letter in evidence.

■ Not only was no notice of readiness given to the charterer, but in fact the vessel was not ready for her voyage during the time when demurrage is alleged to have accrued. Paragraph 1 of the charter required the steamer to be "tight, staunch, strong and every way fitted for" the contemplated voyage. To be fitted for the voyage, she had to have on board about 7,700 barrels of fuel oil plus a due allowance for a margin for safety. See The Waalhaven, 36 F.(2d) 706, 708 (C. C. A. 2). At no time while she was awaiting her berth at the coal pier did she have more than 1,822 barrels; and on July 21st, when she loaded, she had but 1,282 barrels aboard. Thereafter she waited until the morning of July 25th before proceeding to the Standard Oil Company's dock, several miles distant, to replenish her bunkers. This was completed in the afternoon of the 26th, and she was then ready for her voyage. There was no evidence produced that any oil was available or could have been procured for the Edgecomb at any time earlier than the date she got it. Hence, even if delay in load-

226

ing the cargo could be ascribed to a fault of the charterer, there is no proof that the owner suffered from the delay. The authorities, though not numerous, seem to be uniform in holding that an express warranty of fitness for the voyage requires the vessel to be bunkered, or at least to have adequate bunkers available, when she goes to her loading berth. The Effna, 28 F.(2d) 282 (D. C. S. D. N. Y.); Crow v. Myers, 41 F. 806 (D. C. E. D. Va.); N. Y. & Cuba Mail S. S. Co. v. Eriksen (Eng.) 27 Com. Cas. 330. Compare United States v. Courtright-Dimmick Co., 28 F.(2d) 142 (D. C. E. D. Pa.), where bunkers were available though not on board. The libelant relies upon a claim in the charter party giving the vessel liberty to "call at any port or ports for coal and/or other supplies." That clause may not be interpreted as contradicting the warranty of fitness and excusing a deliberately planned insufficiency of bunkers; it contemplates an emergency arising unexpectedly during the voyage. Hurlbut v. Turnure, 81 F. 208, 211 (C. C. A. 2); The Willdomino, 300 F. 5, 12 (C. C. A. 3), affirmed 272 U. S. 718, 727, 47 S. Ct. 261, 71 L. Ed. 491; The Maine, 8 F.(2d) 291, 293 (D. C. S. D. N. Y.).

Finally, the charterer presented a complete defense by proving an agreement to modify the lay days clause. This was made on June 24th or 25th between Mr. Young on behalf of the charterer and Mr. Gawel on behalf of the Tracy Steamship Company acting for the owner. The parties had been informed of the difficulties in loading coal at Baltimore because of the strike of railroad employees, and they agreed to co-operate in loading her as promptly as possible and to count as lay time only such time as the steamer actually should use in loading. The respondent's proofs are not contradicted, but the validity of the agreement is challenged on the ground of absence of consideration on the part of the charterer and absence of authority on the part of the owner's agent. Both grounds are without merit. The charterer gave up the right to dispatch money and the right to cancel on June 25th if the steamer were not tendered on that date. When negotiations began on the 23d, she was still in dry dock. The abandonment of these rights was sufficient consideration. As to Gawel's authority, there was also no difficulty. He was authorized to act for the Tracy Steamship Company in connection with the charter party, and that company was the managing agent for the libelant. By the Act of June 5, 1920 (41 Stat. 988), the earlier statutory formalities (Act July 18, 1918, 40

Stat. 913) as to Shipping Board charters were abolished. Hence the managing agent was left with the authority usual in such agents to deal with an emergency that might involve cancellation of the charter.

Since the decree of dismissal may be sustained on grounds already discussed, we find it unnecessary to consider the evidence relating to the strike, or to determine whether delay in loading would fall within the exception of "time lost through riots, strikes; lockouts, or disputes between masters and men, at docks." Compare United States v. Coal Cargo, 11 F.(2d) 805 (D. C. E. D. Pa.), affirmed 11 F.(2d) 809 (C. C. A. 3); United States v. Russian Volunteer Fleet, 22 F.(2d) 187 (D. C. S. D. N. Y.); The West Nosska (D. C.) 2 F. Supp. 547, 1928 A. M. C. 1631.

Decree affirmed.